IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KATHY MAHAN, as Personal Representative
of the Estate of Kevin Mahan,

                Plaintiff,                CASE NO.:

v.                  Jury Trial Demanded

OFFICER RICHARD C. SAMPLES, III, and
CITY OF JACKSONVILLE, FLORIDA,

                Defendants.
_____/

## COMPLAINT

Plaintiff, Kathy Mahan, as the Personal Representative of the Estate of Kevin Mahan, by and through her attorneys, complains of Defendants Officer Richard C. Samples, III, and City of Jacksonville, Florida, and states as follows:

### Introduction

1.    This case arises from the unjustified deadly shooting of forty-three-year-old Kevin Mahan by Officer Richard C. Samples, III, that took place on April 21, 2022. As alleged below, Officer Samples, in violation of the U.S. Constitution, the Jacksonville Sheriff's Office policies, and his own training, improperly and unnecessarily escalated a non-emergency situation involving an individual who he knew was likely having a mental health episode and then, within a matter of seconds, unlawfully shot and killed Mr. Mahan despite the fact that Mr. Mahan had done

absolutely nothing to place Officer Samples, or anyone else, in imminent danger of death or great bodily harm. This fatal shooting was staggeringly egregious and completely avoidable.

## Parties

2. Plaintiff Kathy Mahan is the mother of Kevin Mahan (deceased) and a resident of Florida. Plaintiff is the personal representative of the Estate of Kevin Mahan.

3. Defendant Officer Richard C. Samples, III, was, during the relevant time, employed by the City of Jacksonville as a sworn law enforcement officer and acted within the scope of his employment and under color of law.

4. Defendant City of Jacksonville, Florida is a municipal corporation organized and doing business under the laws of the State of Florida. During the relevant time, City of Jacksonville employed Officer Richard C. Samples, III as a police officer.

## Jurisdiction And Venue

5. This action arises under the Constitution of the United States, specifically the Fourth Amendment, and under the laws of the United States, specifically the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Florida.

6. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

7. Venue is proper in the Middle District of Florida, Jacksonville Division, under Title 28 of the United States Code, Section 1391(b)(2), as the events giving rise to this litigation occurred within this district, specifically Jacksonville, Duval County, Florida.

## Count I
## 42 U.S.C. § 1983
## Fourth Amendment Violation -Excessive Force
## against Defendant Officer Samples

8. On April 21, 2022, at approximately 11:15 a.m., Officer Samples responded to the 7200 block of Morse Avenue in reference to a disturbance.

9. Upon arrival, Officer Samples was informed by Plaintiff that her son, Kevin Mahan, had a substance abuse disorder, had mental health problems, and that Kevin was causing a minor disturbance on the family-owned property.

10. Plaintiff's husband, neighbor, and nephew also advised Officer Samples of the same. Plaintiff's nephew added that Kevin had committed minor damage to his home, located on the family-owned property, earlier that day.

11. The police considered this to be a minor domestic dispute and there were no warrants issued for Kevin's arrest.

12. Shortly thereafter, Officer Samples was advised that Kevin was located on the property, near a wooded area.

13. Kevin was standing near the wooded area, by himself, with a hatchet in his hands. Kevin often chopped wood on the property with a hatchet when he was having a substance abuse or mental health issue.

14. Kevin had not done anything to indicate that he was a threat to Officer Samples or any other individual. Kevin was simply standing on the family-owned property holding a hatchet.

15. Despite there being no urgency to the situation, Officer Samples, contrary to his training, immediately escalated the situation by running towards Kevin – a person he knew might be having a mental health issue - in an aggressive manner, pointing his firearm at Kevin, and yelling at Kevin to put the hatchet down.

16. In response, Kevin never threatened Officer Samples with the hatchet. Nor did Kevin advance towards Office Samples. Kevin simply remained stationary and tried to engage in conversation with Officer Samples.

17. Nonetheless, contrary to his training, and in another improper act of escalation, Officer Samples got even closer to Kevin, continued to point his firearm at Kevin, and continued yelling at Kevin to put the hatchet down.

18. Again, there was no urgency to the situation. Kevin was not a threat to Officer Samples or anyone else, and Kevin had not previously harmed anyone. Indeed, everyone present on the property were members of Kevin's family.

19. Yet, Officer Samples made no effort to de-escalate the situation, and made no effort to discuss the issue with Kevin's parents, who were standing nearby and could have easily attempted to talk to their son.

20. Further, Officer Samples never identified himself as a police officer, nor stated his purpose to Kevin, again, a person that Officer Samples knew might be having a mental health issue.

21. Despite being in absolutely no danger, Officer Samples fired one shot striking Kevin in the head.

22. Upon information and belief, Officer Samples was standing approximately 30 feet from Kevin when Officer Samples fired his weapon.

23. Officer Samples shot Kevin within 11 seconds of first confronting and yelling at Kevin.

24. Kevin died from the penetrating gunshot wound to his head, and his manner of death was ruled a homicide.

25. At the time Officer Samples discharged his firearm, Kevin had done nothing to put a reasonable police officer in fear of imminent death or great bodily harm.

26. Based on the totality of the circumstances, the use of deadly force by Officer Samples against Kevin was not reasonable.

27. Officer Samples' use of deadly force against Kevin violated Kevin's rights under the Fourth Amendment.

28. As a result of the violation of his Fourth Amendment rights, Kevin suffered severe injury, including his death.

29. As the personal representative of his estate, Plaintiff brings this action for redress against Officer Samples for violating Kevin's civil rights.

### Request For Relief

WHEREFORE, Plaintiff Kathy Mahan, as personal representative of the Estate of Kevin Mahan, prays for judgment against Defendant Officer Richard C. Samples, III and requests an award of compensatory damages, punitive damages, attorneys' fees, costs, and any other relief that is just and appropriate.

### Count II
### Florida Law
### Wrongful Death
### against City of Jacksonville, Florida

30. On April 21, 2022, at approximately 11:15 a.m., Officer Samples responded to the 7200 block of Morse Avenue in reference to a disturbance.

31. Upon arrival, Officer Samples was informed by Plaintiff that her son, Kevin Mahan, had a substance abuse disorder, had mental health problems, and that Kevin was causing a minor disturbance on the family-owned property.

6

32. Plaintiff's husband, neighbor, and nephew also advised Officer Samples of the same. Plaintiff's nephew added that Kevin had committed minor damage to his home, located on the family-owned property, earlier that day.

33. The police considered this to be a minor domestic dispute and there were no warrants issued for Kevin's arrest.

34. Shortly thereafter, Officer Samples was advised that Kevin was located on the property, near a wooded area.

35. Kevin was standing near the wooded area, by himself, with a hatchet in his hands. Kevin often chopped wood on the property with a hatchet when he was having a substance abuse or mental health issue.

36. Kevin had not done anything to indicate that he was a threat to Officer Samples or any other individual. Kevin was simply standing on the family-owned property holding a hatchet.

37. Despite there being no urgency to the situation, Officer Samples, contrary to his training, immediately escalated the situation by running towards Kevin – a person he knew might be having a mental health issue - in an aggressive manner, pointing his firearm at Kevin, and yelling at Kevin to put the hatchet down.

38. In response, Kevin never threatened Officer Samples with the hatchet. Nor did Kevin advance towards Office Samples. Kevin simply remained stationary and tried to engage in conversation with Officer Samples.

39. Nonetheless, contrary to his training, and in another improper act of escalation, Officer Samples got even closer to Kevin, continued to point his firearm at Kevin, and continued yelling at Kevin to put the hatchet down.

40. Again, there was no urgency to the situation. Kevin was not a threat to Officer Samples or anyone else, and Kevin had not previously harmed anyone. Indeed, everyone present on the property were members of Kevin's family.

41. Yet, Officer Samples made no effort to de-escalate the situation, and made no effort to discuss the issue with Kevin's parents, who were standing nearby and could have easily attempted to talk to their son.

42. Further, Officer Samples never identified himself as a police officer, nor stated his purpose to Kevin, again, a person that Officer Samples knew might be having a mental health issue.

43. Despite being in absolutely no danger, Officer Samples fired one shot striking Kevin in the head.

44. Upon information and belief, Officer Samples was standing approximately 30 feet from Kevin when Officer Samples fired his weapon.

45. Officer Samples shot Kevin within 11 seconds of first confronting and yelling at Kevin.

46. Kevin died from the penetrating gunshot wound to his head, and his manner of death was ruled a homicide.

47. At the time Officer Samples discharged his firearm, Kevin had done nothing to put a reasonable police officer in fear of imminent death or great bodily harm.

48. Based on the totality of the circumstances, the use of deadly force by Officer Samples against Kevin was not reasonable.

49. At all relevant times, there existed the Florida Wrongful Death Act, statutorily set forth at Fla. Stat. §§768.16 - 768.26.

50. At all relevant times, the City of Jacksonville, Florida was under a duty to refrain from negligent acts against citizens.

51. On April 21, 2022, the City of Jacksonville, Florida violated that duty by acting with careless and/or reckless disregard for the safety of Kevin. Specifically, the City of Jacksonville, Florida, through its agents, acted in a negligent manner in one or more of the following ways:

   A. Intentionally shot Kevin without lawful justification;

   B. Discharged a weapon in such as manner as to shoot Kevin without lawful justification;

   C. Used excessive and unreasonable force;

   D. Failed to exercise the proper level of force that was warranted under the circumstances;

   E. Failed to properly respond to the situation, failed to properly de-escalate the situation, and failed to properly defuse the situation, without resorting to deadly force;

F. Shot Kevin when there was no reasonable belief that deadly force was necessary to prevent death or great bodily harm to anyone;

G. Acted inconsistently with and/or violated applicable law enforcement standards, including but not limited to City of Jacksonville, Florida standards as they relate to the use of force and/or deadly force;

H. Acted inconsistently with and/or violated applicable law enforcement standards, including but not limited to City of Jacksonville, Florida standards, as they relate to interacting with individuals with mental health issues and/or substance use disorders;

I. Acted inconsistently with and/or violated their own training and their own standard operating procedures; and

J. Were otherwise negligent by acting with careless and/or reckless disregard for the health and safety of Kevin.

52. As a proximate result of one or more of the aforementioned careless and/or reckless acts or omissions, Kevin suffered injuries that resulted in his death.

53. At all relevant times, Officer Samples was acting under color of law and within the scope of his employment by, and as an agent of, the City of Jacksonville, Florida. As such, the City of Jacksonville, Florida is liable for the misconduct of its officers, including Officer Samples, under the legal theory of *respondeat superior.*

54. Plaintiff is the duly appointed representative of the Estate of Kevin Mahan and was his mother at the time of his death.

55. A notice of claim relating to this incident was properly served upon all required entities and individuals on August 1, 2023. On August 14, 2023, the City

of Jacksonville, Risk Management Division, responded to counsel - it's only correspondence to date. In it, the City indicated that they were unwilling to resolve this matter without litigation.

## Request For Relief

WHEREFORE, Plaintiff Kathy Mahan, as personal representative of the Estate of Kevin Mahan, prays for judgment against Defendant City of Jacksonville, Florida and requests an award of compensatory damages, costs, and any other relief that is just and appropriate.

## JURY DEMAND

Plaintiff Kathy Mahan, as personal representative of the Estate of Kevin Mahan, demands a trial by jury.

DATED this 1st day of April, 2024.

/s/ *Mary Sherris*
Mary Sherris
Florida Bar Number: 0138134
Sherris Legal, P.A.
121 South Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 999-9955 Phone
Primary email: service@sherrislegal.com
Secondary email: msherris@sherrislegal.com
Attorney for Plaintiff

HALE & MONICO, LLC
Andrew M. Hale: andy@halemonico.com
Shawn Barnett: sbarnett@halemonico.com
Jason Marx: jmarx@halemonico.com
53 West Jackson, Suite 334
Chicago, IL 60604
(312) 870-6905
Attorneys for Plaintiff
*Pro Hac Vice* applications forthcoming