# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| **KATHY MAHAN,** as Personal Representative of the Estate of Kevin Mahan, | |
| **Plaintiff,** | **3:24-cv-00326-CRK-LLL** |
| v. | |
| **OFFICER RICHARD C. SAMPLES, III and CITY OF JACKSONVILLE, FLORIDA,** | |
| **Defendants.** | |

## INTRODUCTION

Before the court are Defendant Officer Richard C. Samples III's ("Officer Samples") and Defendant City of Jacksonville, Florida's ("City of Jacksonville" or "Jacksonville") motions for summary judgment in the case brought on behalf of the Estate of Kevin Mahan by personal representative Kathy Mahan ("Plaintiff") for (1) the violation of decedent Kevin Mahan's Fourth Amendment rights as a result of Officer Samples's use of excessive force and (2) the City of Jacksonville's vicarious liability for Kevin Mahan's wrongful death as a result of Officer Samples's negligence and battery.

OPINION - 1

3:24-cv-00326-CRK-LLL

## UNCONTESTED MATERIAL FACTS[1]

At 3:56 a.m. on April 21, 2022, Jacksonville Sherriff's Office ("JSO") officers responded to John Stratton's ("Stratton") 911 call reporting that Kevin Mahan ("Kevin") was attempting to enter his house.  Samples Mot. Summ. J. at 2, May 21, 2025, ECF No. 37 ("Samples Mot."), (citing Incident Detailed Report at 1, April 21, 2022, ECF No. 34-13 ("Incident Report 1")); Pl. Resp. Opp'n [Samples] Mot. Summ. J. at 1, June 11, 2025, ECF No. 43 ("Pl. Resp.") (citing Incident Report 1 at 1; City of Jacksonville Mot. Summ. J. at 3, May 21, 2025, ECF No. 33, ("Jacksonville Mot."); Stratton 911 Call, April 21, 2023, ECF No. 34 Ex. 4.).  Officers spoke with Stratton and with Kevin but did not arrest Kevin or prepare a police report.  Samples Mot. at 2 (citing Incident Report 1 at 1); Pl. Resp. at 2, (citing Incident Report 1 at 1.).  Later that morning, Stratton called Kevin's parents, Kathy and Lee Mahan, and told them Kevin had been on his property.  Samples Mot. at 2; (citing Deposition of Kathy Mahan at 126, April 29, 2025, ECF No. 34-16 ("Mahan Dep.")).[2]  The Mahans went to the property to look for Kevin, spoke with him briefly and then returned home without him.  Samples Mot. at 3 (citing Mahan Dep. at 134).

---

[1]  The uncontested facts consist of facts put forth by the nonmovant, which for the purposes of this motion the court must accept as true, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), and undisputed facts.  To dispute a fact, the nonmoving party must directly respond to the movant's statement of facts.  If a party fails to properly address another party's factual assertion as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). Further, where video evidence clearly depicts the events, courts accept the video's portrayal and view the facts in the light shown by the video.  <u>Baker v. City of Madison, Alabama</u>, 67 F.14th 1268, 1277–78 (11th Cir. 2023) (citing <u>Scott v. Harris</u>, 550 U.S. 372, 381 (2007).
[2]  Transcription of Video Recorded Deposition of Kathy Mahan.

**OPINION – 2**

3:24-cv-00326-CRK-LLL

Around 11:00 a.m., two uniformed JSO officers, Officers Samples and J.R. Cason responded to a 911 call from a neighbor who lived across the street from Stratton. Samples Mot. at 3 (citing Deposition of Officer Richard Samples III at 154, 156, Dec. 30, 2024, ECF No. 34-1 ("Samples Dep."));[3] Pl. Resp. at 2 (citing Samples Dep. at 146–47). Officer Samples met the neighbor, Kathy, and Lee in the neighbor's driveway. Samples Mot. at 3 (citing Samples Dep. at 154, 156); Pl. Resp. at 2 (citing Samples Dep. at 146–47; Officer Samples's Body Worn Camera Footage at T15:22:52-23:57, April 22, 2025, ECF No. 34 Ex. 1-J ("BWC1")). The neighbor reported that Kevin appeared to be under the influence of drugs and that she saw him angrily trying to open a gate. Samples Mot. at 3, 4 (citing Samples Dep. at 154, 156); Pl. Resp. at 2 (citing Samples Dep. at 146–47); Jacksonville Mot. at 4 (citing Samples Dep. at 154, 156). Kathy told Officer Samples that Kevin had a substance abuse disorder and mental health problems, though he had never been diagnosed with a mental illness. Samples Mot. at 3, 4 (citing Samples Dep. at 155); Pl. Resp. at 2 (citing Samples Dep. at 146–47); BWC1 at T15:25:01-33. She also said he had been attending Alcoholics Anonymous, seeing a therapist, and was "doing good." Jacksonville Mot. at 4 (citing Mahan Dep. at 157). Officer Samples returned to his patrol car, checked Kevin's criminal history, and saw entries for resisting an officer without violence, possession of a firearm by a convicted felon, felony fleeing or attempting to elude, and armed robbery. Samples Mot. at 4 (citing Samples Dep. at 173–74).

---

[3] Transcription of Video Recorded Deposition of Officer Richard Samples, III.

**OPINION – 3**

3:24-cv-00326-CRK-LLL

While reviewing records, Officer Samples saw that Stratton had called the JSO again at 11:20 a.m. that day. Samples Mot. at 4 (citing Samples Dep. at 179). Stratton referenced the early morning encounter, reported that Kevin had returned and was agitated, and said that if Kevin tried to break in again, he had a gun and would shoot. Samples Mot. at 4 (citing Samples Dep. at 181–85); Pl. Resp. at 3 (citing Samples Dep. at 181). Officer Samples then walked to Stratton's house and spoke to him about the early morning incident, during which Kevin had cut internet and camera wires with an unknown tool and tried to enter through a window. Samples Mot. at 4 (citing Samples Dep. at 183); Pl. Resp. at 3 (citing Samples Dep. at 181). Although Kevin was no longer there, Officer Samples told Stratton that he would generate a police report for felony "criminal vandalism." Samples Mot. at 5 (citing Samples Dep. at 186–87); Pl. Resp. at 3–4 (citing Samples Dep. at 186, 237; Mahan Dep. at 208–09). Officer Samples returned to his patrol car to await evidence technicians, BWC2 at T16:15:32.[4] Kathy then approached and told him that Kevin had come back to the property. Samples Mot. at 5 (citing Mahan Dep. at 198–99); Pl. Resp. at 3–4 (citing Samples Dep. at 198–99; Mahan Dep. at 160). Officer Samples drove down Stratton's driveway to the main road to look for Kevin. Pl. Resp. at 3–4 (citing Samples Dep. at 200). Over the radio, Officer Cason reported that he saw Kevin on the property headed toward Stratton's house. Samples Mot. at 5 (citing Samples Dep. at 200–01).

---

[4] Officer Samples's Body Worn Camera Footage at T16:18:57, April 22, 2025, ECF No. 34 Ex. 1-N ("BWC2").

**OPINION - 4**

3:24-cv-00326-CRK-LLL

Officer Samples turned back onto the property and drove down the driveway toward Stratton's house, parked, and exited his vehicle. Samples Mot. at 5 (citing Samples Dep. at 204); Pl. Resp. at 4 (citing Mahan Dep. at 209). Officer Samples, as he ran toward Kevin, asked, "Is that him?". BWC2 at T16:18:57. Officer Samples did not instruct anyone to stay back or go inside. Pl. Resp. at 5 (citing Mahan Dep. at 210); Deposition of Lee Mahan at 90–91, April 29, 2025, ECF No. 34-24 ("Lee Mahan Dep.");[5] BWC2 at T16:18:36-16:19:14. Officer Samples saw Kevin holding a hatchet in his right hand, down at his side. Samples Mot. at 6 (citing Samples Dep. at 210); Pl. Resp. at 4 (citing BWC2 T16:18:36-16:19:14). While moving toward Kevin, he drew his firearm, pointed it at Kevin, and repeated the command, "Put the hatchet down." Samples Mot. at 6 (citing Samples Dep. at 214, 216); BWC2 T16:18:36–16:19:14; Pl. Resp. at 4. He continued to advance and gave the command four times, until he was about 20 to 30 feet away. Samples Mot. at 6 (citing Samples Dep. at 214–16); Pl. Resp. at 7 (citing JSO Incident Report at 50, April 21, 2025, ECF No. 34-25 ("Incident Report 2")).[6] Samples Dep. at 215–16. He did not identify himself as a police officer and did not warn that he would shoot. Pl. Resp. at 7 (citing BWC2 at T16:13:36–16:19:14). After the fourth command, Kevin raised the hatchet while facing Officer Samples. Samples Mot. at 7 (citing Samples Dep. at 218–19); Pl. Resp. at 7 (citing Samples Dep. at 218–19). Officer Samples aimed at Kevin's head and fired, striking him in the forehead and killing him instantly. Samples Mot. at 7 (citing

---

[5] Transcript of Video Recorded Deposition of Lee Mahan.
[6] JSO Incident Report detailing the force used on Kevin.

**OPINION – 5**

Samples Dep. at 218–19); Pl. Resp. at 7 (citing Samples Dep. at 218–19); Med.
Examiner's Rep. at 2, April 22, 2025, ECF No. 43-4 Ex. D; BWC2 T16:18:36-16:20:20.
Officer Samples is an experienced axe thrower and has competed in and won hatchet
and knife-throwing competitions.  Pl. Resp. at 5–6; Def. Mot. at 7 (citing Samples
Dep. at 40).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over "all civil actions arising under the Constitution,
laws, or treaties of the United States." 28 U.S.C. § 1331.  The court has supplemental
jurisdiction over "all claims that are so related" to the federal claims that they form
part of the same case or controversy, including claims involving additional parties.
28 U.S.C. § 1367(a).  Summary judgment is proper "if the movant shows that there is
no genuine dispute and that the movant "is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  A dispute of fact is "'genuine' if the record, viewed as a whole,
could lead a rational trier of fact to find for the nonmovant.  Allen v. Tyson Foods,
Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477
U.S. 242 at 248 (1986). Courts do not weigh evidence at this stage and ask instead
whether the evidence presents a dispute that a jury could reasonably resolve in either
party's favor.  Anderson, 477 U.S. at 250–51.  Courts must "construe the facts and
draw all inferences in the light most favorable to the nonmoving party."  Feliciano v.
City of Miami Beach, 707 F.3d 1244, 1252 (11th Cir. 2013).  If reasonable minds could
differ on the inferences that arise from undisputed facts, summary judgment should

3:24-cv-00326-CRK-LLL

be denied.  Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1318 (11th Cir. 2015).

## DISCUSSION

Defendant Officer Samples moves for summary judgment based on qualified immunity.  He argues that his use of force was reasonable under the circumstances, Samples Mot. at 10, and even if it was not, no clearly established law would have put him on notice that the use of deadly force was unconstitutional.  Samples Mot. at 21. Defendant City of Jacksonville also moves for summary judgment.  It argues that it cannot be liable under the Florida Wrongful Death Act because Plaintiff cannot show that Officer Samples used excessive force, and without excessive force, Jacksonville cannot be held vicariously liable for negligence or battery.  Jacksonville Mot. at 21– 25.  Plaintiff opposes both motions.  She argues that Officer Samples's use of force was excessive, that he created a dangerous situation, and that his conduct was not objectively reasonable.  Pl. Resp. at 9–17.  She also argues that clearly established law made the unconstitutionality of the force apparent at the time.  Pl. Resp. at 9– 17.  Plaintiff contends that Officer Samples's conduct was not objectively reasonable, and that Jacksonville is vicariously liable under Florida law.  Pl. Resp. in Opp'n to Jacksonville Mot. Summ. J. at 9–14, June 11, 2025, ECF No. 44.

## I.    Section 1983 Claims and Qualified Immunity

Section 1983 creates a private right of action for the deprivation of rights secured by the Constitution.  42 U.S.C. § 1983.  When a plaintiff alleges a Fourth Amendment violation by a law enforcement officer, the officer may invoke qualified

3:24-cv-00326-CRK-LLL

immunity. <u>Bailey v. Wheeler</u>, 843 F.3d 473, 480 (11th Cir. 2016).  Qualified immunity is an immunity from suit, not a mere defense to liability.  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  Once a defendant shows he acted within his discretionary authority, the burden shifts to the plaintiff to show both a constitutional violation and that the right was "clearly established" at the time.  <u>Case v. Eslinger</u>, 555 F.3d 1317, 1325–26 (11th Cir. 2009).  Whether a right is clearly established is a question of law.  <u>See</u> <u>Simmons v. Bradshaw</u>, 879 F.3d 1157, 1163 (11th Cir. 2018) (citing <u>Mitchell</u>, 472 U.S. at 526).  The parties do not dispute that Officer Samples was acting within his discretionary authority when he fired his service weapon.  Pl. Resp. at 9; Samples Mot. at 20.  Viewing the evidence in the light most favorable to Plaintiff, a genuine dispute remains as to whether Officer Samples violated Kevin Mahan's Fourth Amendment rights.  Even so, the right was not clearly established at the time of the incident and thus, Officer Samples is entitled to qualified immunity.

### A.    Violation of a Constitutional Right

To state a § 1983 claim, a plaintiff must show a constitutional violation by a person acting under color of state law.  <u>Melton v. Abston</u>, 841 F.3d 1207, 1219 (11th Cir. 2016) (citing <u>Holmes v. Crosby</u>, 418 F.3d 1256, 1258 (11th Cir. 2005)). To overcome qualified immunity, the plaintiff must also show that the officer violated a constitutional right.  <u>Case</u>, 555 F.3d at 1325–26.  In deadly force cases, courts assess the "totality of the circumstances" to determine objective reasonableness.  <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1166 (11th Cir. 2009) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).  The totality inquiry includes all events leading up to the force, the parties' interactions, and past circumstances known to the officer.  <u>Heid v.</u>

3:24-cv-00326-CRK-LLL

Rutkoski, 143 F.4th 1255, 1262 (11th Cir. 2025) (citing Barnes v. Felix, 605 U.S. 73, 80–81 (2025)).

The Fourth Amendment protects against unreasonable searches and seizures, which includes freedom from excessive force. Graham, 490 U.S. at 394–95. Deadly force is a seizure and must be reasonable. Tennessee v. Garner, 471 U.S. 1, 7–9 (1985). Courts balance the nature and quality of the intrusion against the governmental interests at stake and evaluate the facts from the perspective of a reasonable officer on the scene, not with hindsight. Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Graham, 490 U.S. at 396); see also Terrell v. Smith, 668 F.3d 1244, 1251 (11th Cir. 2012).

The Fourth Amendment reasonableness standard is purely objective. Graham, 490 U.S. at 397. Courts do not speculate about what the officer subjectively thought but rather assess the officer's actions for objective reasonableness. Stephens v. DeGiovanni, 852 F.3d 1298, 1315 (11th Cir. 2017). Deadly force is reasonable if a reasonable officer with the same particularized information could have perceived the need for it. Penley v. Eslinger, 605 F.3d 843, 852 (11th Cir. 2010). The objective view discounts an officer's subjective fears about dangerousness. See, e.g., Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) ("[e]xcessive force is judged solely on an objective basis.").

Courts assess deadly force under the totality of the circumstances. They ask whether the officer (1) had probable cause to believe the suspect posed a threat of

3:24-cv-00326-CRK-LLL

serious physical harm to the officer or to others,[7] or had committed a violent felony;
(2) reasonably believed deadly force was "necessary to prevent escape;" and (3) gave
a warning, if feasible, before using such force.  Robinson v. Sauls, 46 F.4th 1332, 1343
(11th Cir. 2022) (citing Garner, 471 U.S. at 11–12).  Whether a suspect poses a threat
turns on the "level and immediacy of that threat" under the objective reasonableness
standard.  Perez v. Suszczynski, 809 F.3d 1213, 1220 (11th Cir. 2016) (citing
Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)).  The presence of a weapon is
relevant, yet it is "merely one element in the calculus."  Perez, 809 F.3d at 1220.
Possession of a weapon, without more, does not establish an immediate danger when
the suspect is not otherwise threatening anyone at the time of the shooting.  Atkins
v. Bennett, 2025 WL 1927992, at *9 (M.D. Fla. 2025).  The nature of the weapon, its
location, and how it is being used are all relevant.  Perez, 809 F.3d at 1220 (a person
six feet away with a knife presents a different threat than a person six feet away with
a gun).

The use of deadly force to prevent the escape of a felony suspect is generally
constitutionally unreasonable.  Garner, 471 U.S. at 11.  However, when an officer has
probable cause to believe that a fleeing subject poses an immediate threat to the
officer or others, deadly force may be used if the officer reasonably believes it is
necessary to prevent that harm.  Id.  For example, in Montoute v. Carr, the Eleventh

---

[7] An officer asserting qualified immunity in an excessive force case "need only have
arguable probable cause, not actual probable cause." Garczynski, 573 F.3d at 1167.
The question is whether a reasonable officer, given the information at the time, could
have believed, that the individual posed a threat of serious physical harm. See id.

**OPINION – 10**

3:24-cv-00326-CRK-LLL

Circuit held that an officer acted reasonably in shooting a fleeing felon who carried a sawed-off shotgun, as a reasonable officer could conclude the suspect "posed a risk of serious physical injury" to others if he escaped. Montoute, 114 F.3d at 184–85. By contrast, in Perez, the court deemed an officer's use of deadly force "unnecessary" because the suspect neither resisted arrest nor attempted to flee. Perez, 809 F.3d at 1219. Deadly force may be justified even absent flight or resistance where it is necessary to protect the officer's safety. See Shaw v. City of Selma, 884 F.3d 1093, 1100–01 (11th Cir. 2018). In Shaw, the subject had not committed a crime, was not fleeing, and was not resisting arrest; but was mentally ill, wielding a hatchet, and rapidly advancing toward the officer. Id. When the suspect closed within five feet with the hatchet still in hand, the officer fired, and the court held that use of deadly force was necessary and reasonable for self-protection. Id. at 1100–01.

Whether an officer warned a suspect of the potential use of deadly force is not dispositive of reasonableness. Pipkins v. City of Hoover, Alabama, 134 F.4th 1163, 1172 (11th Cir. 2025). Because Garner demands a warning only when feasible, the Eleventh Circuit has rejected any rigid warning rule. See id. The feasibility of a warning is highly context-dependent, and whether a warning could reasonably have been given is often a factual question for the factfinder. Id. at 1172.

Here, the court must accept Plaintiff's version of the facts and draw all inferences in her favor. The court must then decide whether an objectively reasonable police officer, in light of the facts known to him, could have believed that Kevin posed an immediate threat, that deadly force was necessary to prevent harm or escape, and

3:24-cv-00326-CRK-LLL

that a warning was not feasible.  See Robinson v. Sauls, 46 F.4th at 1343 (citing Garner, 471 U.S. at 11–12); Barnes, 605 U.S. at 82.  The analysis is not confined to the split-second when Kevin raised the hatchet.  The court must consider the totality of the circumstances, including all events leading up to the moment of threat.  Barnes, 605 U.S. at 82.  Here, that inquiry runs from the time Officer Samples exited his vehicle and advanced with his weapon drawn through the point at which he used deadly force.  See Garner, 471 U.S. at 11.  Barnes requires evaluation of the entire encounter, including the officer's preceding conduct without chronological blinders. Barnes, 605 U.S. at 82.

Disputed facts and competing factual inferences preclude summary judgment on whether Officer Samples conduct was objectively reasonable.  Whether a reasonable officer in Officer Samples's position would have had probable cause to believe Kevin posed an immediate threat of serious physical harm depends on how those disputes and inferences are resolved.  To begin, there is a genuine dispute of material fact about whether Kevin was walking toward or away from Stratton's house.  Pl. Resp. at 4, citing Mahan Dep. at 209; Samples Mot. at 5, citing Samples Dep. at 204.  Officer Samples states that Officer Cason told him Kevin was moving toward Stratton's house, and that Kevin continued in that direction as Officer Samples exited his car.  Samples Mot. at 5 (citing Samples Dep. at 204).  Plaintiff asserts that Kevin was moving away from Stratton's house when Officer Samples drove toward him, and that once Officer Samples exited his car, Kevin remained completely stationary.  Pl. Resp. at 4 (citing Mahan Dep. at 209).  One could infer on

**OPINION – 12**

3:24-cv-00326-CRK-LLL

these facts that at the time Officer Samples exited his patrol car, Kevin did not pose a danger to Officer Samples or others. Additionally, several undisputed facts support competing inferences such that a reasonable officer could not have had probable cause to believe Kevin posed an immediate threat of serious harm. Kevin held a hatchet when Officer Samples saw him at the wood line. Pl. Reply (Samples) at 4; Samples Mot. at 6. One could infer that he intended to use it as a weapon, or that he had been cutting wood and did not intend to weaponize it. Kevin did not drop the hatchet after four commands to do so. Samples Mot. at 6; BWC at T16:18:58–T16:19:12. One could infer resistance to apprehension, or alternatively, that Kevin did not comprehend the command. The Mahans assert that they were about 60 feet behind Officer Samples as he approached with his gun raised. Mahan Dep. at 168–169. A jury could infer that Samples knew they were out of immediate threat of harm from the hatchet, and thus, deadly force was unnecessary. See Atkins, 2025 WL 1927992 at *9–10 (suspect was out of striking distance and therefore did not pose an immediate danger).

In considering the totality of circumstances, the court cannot ignore the moment at which Kevin raised the hatchet in Officer Samples's direction. On Plaintiff's account, Kevin ignored four commands to drop the hatchet and then raised it in Samples's direction. Pl. Resp. at 12 (citing Samples Mot. at 1). Deadly force is allowed where a reasonable officer would perceive an imminent threat. See Garczynski, 573 F.3d at 1167–68 (officers reasonably responded to an immediate threat and had no duty to wait); Penley, 605 F.3d at 856 (reasonable to shoot a student later found to be holding a replica gun); Jean-Baptiste v. Gutierrez, 627 F.3d

**OPINION - 13**

3:24-cv-00326-CRK-LLL

816, 822 (11th Cir. 2010) (deadly force reasonable against armed suspect despite a dispute about whether the gun was pointed); Shaw, 884 F.3d 1100–01 (reasonable to shoot man charging with raised hatchet); Powell v. Snook, 25 F.4th 912, 924 (11th Cir. 2022) (deadly force authorized once the suspect began raising pistol while facing the officer). Thus, viewing the "situation at the precise time of the shooting" in isolation would weigh in favor of Officer Samples's reasonableness. See Barnes, 605 U.S. at 80.[8] However, given the totality of the circumstances and viewing the facts and the inferences in Plaintiff's favor, the court cannot say as a matter of law that Officer Samples's quick approach towards Kevin, leading to the point where Kevin raised a hatchet in his direction, and Officer Samples's subsequent use of deadly force was objectively reasonable.

---

[8]  Plaintiff argues that Kevin's possession of a hatchet "did not pose an immediate threat of serious harm, and certainly did not constitute a 'threat[] with deadly force.'" Pl. Resp. at 12 (citing Samples Dep. at 218–19). Plaintiff relies on Officer Samples's undisputed experience with hatchet-throwing, Pl. Resp. at 6 (citing Samples Dep. at 40); Def. Mot. at 7, and urges the inference that he knew or should have known that Kevin was not a threat because Kevin was not in a throwing stance and was "incapable of throwing the hatchet" and striking Officer Samples from that distance. Pl. Resp. at 6–7. Plaintiff cites her expert's opinion on the likelihood that Kevin, given his level of skill and expertise, the type of hatchet he wielded, and the stance he took could have hit Officer Samples with the hatchet from where Kevin stood. Pl. Resp. at 6–7 (citing Pl. Expert Report of Sarah Sed at 18–20, Jan. 12, 2025, ECF No. 43-3 Ex. C.) The Fourth Amendment reasonableness inquiry is objective and turns on what a reasonable officer would believe in light of the facts known at the time. See Stephens, 852 F.3d at 1315. Even if one considers Officer Samples's knowledge of factual hatchet-throwing relevant, Plaintiff concedes that Officer Samples had no knowledge as to Kevin's level of skill and expertise. Pl. Resp. at 5–6. An objectively reasonable officer, including one with hatchet-throwing experience, need not wait for a suspect who has raised a hatchet toward him to adjust an elbow or take a step to improve the throw. See Garczynski, 573 F.3d at 1167–68 (officers did not have to wait when suicidal man with gun moved gun towards officers).

**OPINION - 14**

3:24-cv-00326-CRK-LLL

Construing the facts in the light most favorable to Plaintiff, a jury could also infer that Kevin was neither resisting nor attempting to flee. Although it is disputed, Plaintiff contends that Kevin was moving away from Stratton's house and was at least 200 feet away from the house when Officer Samples arrived. Pl. Resp. at 4. When Officer Samples saw Kevin, Kevin stood stationary with the hatchet at his side. Pl. Resp. at 4, citing Mahan Dep. at 209. Although Officer Samples asserts that Kevin could have fled to Stratton's house, the neighbor's house, or toward officers, Samples Mot. at 11, a reasonable factfinder could conclude that Kevin was not attempting to flee or harm anyone, and was far enough away that he posed no immediate risk even if he did eventually flee. Officer Samples's conduct here is not analogous to Eleventh Circuit cases that granted immunity where a suspect was fleeing or violently resisting. See, e.g., Montoute, 114 F.3d at 183–84 (suspect ran in public with a sawed-off shotgun); Long v. Slaton, 508 F.3d 576, 583 (11th Cir. 2007) (suspect in psychotic fit drove away in a marked sheriff's cruiser). Officer Samples points to Shaw, which upheld deadly force against a suspect who was not fleeing nor actively resisting as reasonable. Shaw, 884 F.3d at 1097. In Shaw, the suspect was in a busy public area, advanced rapidly with a hatchet, and closed to within five feet when the officer fired. Id. Here, in the seconds before Officer Samples exited his vehicle, Kevin stood about 150 feet from Officer Samples and about 200 feet from others, remained stationary, was not aggressive, and did not possess a weapon that could inflict harm at a great distance. Pl. Resp. at 4, citing Mahan Dep. at 209; Samples Mot. at 6. On Plaintiff's facts and inferences, a reasonable officer in Officer Samples's position could

**OPINION – 15**

3:24-cv-00326-CRK-LLL

believe that drawing a firearm, rushing toward Kevin, and using deadly force was not necessary to prevent Kevin's escape and protect others from potential harm.

Third, the record supports an inference that a warning was feasible. Kevin stood with the hatchet at his side while Officer Samples moved from over 150 feet to about 30 feet. Pl. Resp. at 4–6; BWC2 T16:19:12; Samples Mot. at 6–7. During that approach, Officer Samples did not identify himself as the police or issue a warning; instead, he issued four commands to drop the hatchet. Samples Mot. at 6–7; BWC2 at T16:18:58–T16:19:12. A jury could find there was time to advise Kevin that failure to drop the hatchet could result in deadly force.

A jury could conclude that Kevin did not pose an immediate threat of serious harm or a risk of escape from the moment Officer Samples exited his vehicle until Kevin raised the hatchet. Likewise, a jury could conclude that Officer Samples could have warned Kevin prior to using deadly force. Thus, Plaintiff has established that a jury could conclude that Officer Samples's use of deadly force was not objectively reasonable under Graham. Graham v. Connor, 490 U.S. 386, 396–97 (1989).

### B.    A Clearly Established Right

Even if a constitutional violation occurred, qualified immunity applies unless the right was clearly established at the time. Case v. Eslinger, 555 F.3d 1317 at 1325–26 (11th Cir. 2009). A right is clearly established when its contours are sufficiently clear that a reasonable officer would understand that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Saucier v. Katz, 533 U.S. 194, 202 (2001); Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019).

OPINION - 16

3:24-cv-00326-CRK-LLL

The officer must have fair notice that, on the plaintiff's version of the facts, his conduct violates the Constitution. <u>Hope</u>, 536 U.S. at 739–740. Qualified immunity, then, shields all but the "plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986); <u>see also</u> <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011).

At summary judgment, courts must define the "clearly established" right at issue with attention to the case's specific facts. <u>Tolan v. Cotton</u>, 572 U.S. 650, 657 (2014).[9] Once particularized, the inquiry is whether, at the time of the incident, existing precedent made the unlawfulness apparent to a reasonable officer. <u>Tolan</u>, 572 U.S. at 656. Officers are entitled to qualified immunity unless prior authority "squarely governs" the specific facts. <u>See</u> <u>Mullenix v. Luna</u>, 577 U.S. 7, 13 (2015) (per curiam) (citing <u>Brosseau v. Haugen</u>, 543 U.S. 194, 201 (2004)). A plaintiff may demonstrate clearly established law by identifying (1) materially similar precedent addressing the specific conduct; (2) a broader principle that applies with obvious clarity to the novel facts; or (3) conduct so egregious that prior case law is unnecessary. <u>Corbitt</u>, 929 F.3d at 1312. If none of these criteria show the violation

---

[9] In <u>Tolan</u>, an officer shot Tolan without warning in his parents' driveway. <u>Tolan</u> 572 U.S. at 655. The lower court, crediting the officer's account, inferred Tolan's words were a threat and his movements showed he was "moving to intervene." <u>Id.</u> The Supreme Court reversed, emphasizing that on summary judgment, when all inferences go to the plaintiff, a jury could find Tolan's words nonthreatening and his movements merely a shift in position. <u>Id.</u> at 659. Further, the Court instructed the court to consider whether, when viewing the facts as set forth by the nonmovant, the right was clearly established. <u>Id.</u> at 660.

**OPINION - 17**

3:24-cv-00326-CRK-LLL

was apparent on the nonmovant's version of the facts, the officer is granted qualified immunity.  Id.

A law is clearly established if the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida has confronted and ruled on the same facts.[10]  Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005); see, e.g., Acosta v. Miami-Dade Cnty., 97 F.4th 1233, 1241–44 (11th Cir. 2024) (stun-gun use and kicks on a prone, non-resisting suspect violated clearly established law); Brooks v. Miller, 78 F.4th 1267, 1277–78, 1282–83 (11th Cir. 2023) (slam during a minor offense arrest and refusal to loosen overtightened handcuffs violated clearly established prohibitions on gratuitous force and ignorance of obvious pain); Helm v. Rainbow City, Ala., 989 F.3d 1265, 1274–76 (11th Cir. 2021) (repeated Taser use on a teen with no suspected crime and no threat violated the Constitution).

Absent a case that addresses the precise facts, general statements can clearly establish the law if they give officers "fair warning."  Mercado, 407 F.3d at 1159 (citing Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003)); see also Hope v. Pelzer, 536 U.S. 730, 741–45 (2002) (clearly established without a factually-identical case that handcuffing a prisoner to a hitching post for hours violated the

---

[10]  Qualified immunity is defeated by a clearly established federal right underlying a plaintiff's § 1983 claim, not by an officer's violation of state law or departmental policy.  Elder v. Holloway, 510 U.S. 510, 515 (1994) (explaining Davis); Davis v. Scherer, 468 U.S. 183, 193–97 & n.14 (1984).  Accordingly, an officer's compliance with, or deviation from internal policies does not establish or defeat qualified immunity, and the inquiry remains whether the officer violated clearly established federal law, and whether the force was objectively reasonable under Graham, 490 U.S. 386, and Garner, 471 U.S. 1.

OPINION - 18

3:24-cv-00326-CRK-LLL

Eighth Amendment).  For example, it is clearly established that unprovoked force against a non-hostile, non-violent, and compliant person violates the Fourth Amendment.  See Fils v. City of Aventura, 647 F.3d 1272, 1289–90 (11th Cir. 2011); see also Hardigree v. Lofton, 992 F.3d 1216, 1232 (11th Cir. 2021) (reasonable officers would know that shoving and repeated Taser use on a compliant suspect is unconstitutional).  Ultimately, the question is whether the general principle makes the unlawfulness of the conduct apparent even without a fact-for-fact case on point. Powell, 25 F.4th at 920; but see Kisela v. Hughes, 584 U.S. 100, 105–06 (2018) (per curiam) (where no precedent "squarely governs" the facts, the general principles of Garner and Graham do not, "by themselves," clearly establish the law "outside an 'obvious case.'").

Third, qualified immunity fails where the conduct is so obviously unconstitutional that no precedent is needed.  Vinyard v. Wilson, 311 F.3d 1340, 1350–52 (11th Cir. 2002); see e.g., Mercado, 407 F.3d at 1157–60 (projectile to the head of a stationary man who threatened no one).  Smith v. Mattox, 127 F.3d 1416, 1418–20 (11th Cir. 1997) (breaking the arm of a stationary, nonviolent man); Lee v. Ferraro, 284 F.3d 1188, 1198–1200 (11th Cir. 2002) (slamming the head of a fully handcuffed, non-resisting arrestee into a car); Priester v. City of Riviera Beach, 208 F.3d 919, 926–27 (11th Cir. 2000) (ordering a dog to attack a compliant suspect on the ground).  In cases that fall into this category, the court denies qualified immunity not because of factually similar precedent, but because any reasonable officer would

OPINION - 19

know his conduct lies "at the very core of what the Fourth Amendment prohibits." <u>Lee</u>, 284 F.3d at 1199.

The right at issue here is freedom from an officer-created danger leading to the use of deadly force. To overcome qualified immunity, clearly established law must have made it apparent that where the officer's own conduct created the "moment-of-threat" that necessitated the use of deadly force, the officer violated the Fourth Amendment. Accepting Plaintiff's account, when Officer Samples first saw Kevin, he was standing stationary by the woods, holding a hatchet, not walking toward Stratton's house, and about 150 feet away from the nearest person. Officer Samples then advanced rapidly with his gun drawn, which introduced the risk of serious physical harm to himself and escalated a non-immediate threat into a lethal encounter.

Neither the Eleventh Circuit nor the Supreme Court has resolved whether an "officer-created danger" controls the Fourth Amendment analysis. Before <u>Barnes</u>, Eleventh Circuit cases focused on immediacy at the moment force was used. <u>See, e.g.</u>, <u>Montoute</u>, 114 F.3d at 185 (suspect fled with a sawed-off shotgun and ignored commands); <u>Robinson v. Arrugueta</u>, 415 F.3d 1252, 1256–57 (11th Cir. 2005) (driver suddenly accelerated toward an officer who was boxed in); <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1207–09 (11th Cir. 2009) (car used as a weapon in the moments before the shot); <u>Garczynski</u>, 573 F.3d at 1167–68 (suicidal man moved the gun toward officers at close range); <u>Jean-Baptiste</u>, 627 F.3d at 821–22 (armed suspect turned with a gun and officers could fire until the threat ended); <u>Shaw</u>, 884 F.3d at 1100–01 (man

**OPINION – 20**

3:24-cv-00326-CRK-LLL

advanced with a hatchet despite commands); see also Harris-Billups ex rel. Harris v. Anderson, 61 F.4th 1298, 1302 (11th Cir. 2023) (citing Powell, 25 F.4th at 922) (the question is whether the officer violated the Constitution and whether "it was clearly established at the time that his specific actions did so.").

Only recently, the Supreme Court rejected the Fifth Circuit's narrow "moment-of-threat" rule emphasizing that Fourth Amendment excessive force claims must be assessed under the totality of the circumstances, including relevant pre-shooting events and officer conduct such as warnings and efforts to control the encounter. Barnes, 605 U.S. at 74, 80 ("no time limit" on the inquiry and prior events may render later conduct threatening or innocuous). Barnes declined to decide whether or how "officer-created danger" factors into the reasonableness analysis.[11] See id. Lower courts have begun to apply Barnes's broader lens. See Watkins v. Davis, 2025 WL 2730900 at *17 (11th Cir. 2025) (considering "prior events" under Barnes in assessing both the violation and clearly established prongs). Because Barnes post-dates the incident here and leaves the officer-created danger issue unresolved, and because pre-Barnes Eleventh Circuit law centered on immediacy at the moment force was used, Plaintiff cannot and has not identified Supreme Court or Eleventh Circuit authority that squarely governs these facts.[12]

_____

[11] Relatedly, a plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." Powell, 25 F.4th at 922 (citing City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 615 (2015)).
[12] Plaintiff has not identified, nor has the court found any Florida Supreme Court precedent relevant to this case.

**OPINION – 21**

3:24-cv-00326-CRK-LLL

Plaintiff proposes <u>Swofford v. Eslinger</u> as clearly established precedent that put Officer Samples on notice that his conduct was unconstitutional. <u>Swofford v. Eslinger</u>, 671 F. Supp. 2d 1289, 1309 (M.D. Fla. 2009), <u>aff'd</u> 395 F. App'x 559 (11th Cir. 2010). In <u>Swofford</u>, deputies tore down fencing during a non-exigent search, entered without announcing, and shot the homeowner. <u>Id.</u> at 1309. The court denied qualified immunity by applying a provocation rule, reasoning that a predicate Fourth Amendment violation rendered the subsequent force unreasonable. <u>Id.</u> The Supreme Court has since abrogated the provocation theory relied upon in <u>Swofford</u>. <u>See</u> <u>Cnty. of Los Angeles v. Mendez</u>, 581 U.S. 420, 431 (2017) (once the eventual force is reasonable under <u>Graham</u>, liability cannot rest solely on a prior constitutional violation). <u>Mendez</u> also left open how "officer-created danger" bears on the <u>Graham</u> analysis. <u>Id</u> at 431.

Additionally, this case differs materially from <u>Swofford</u>. There, deputies unlawfully entered private property at night without announcing that they were officers. <u>Swofford</u>, 671 F. Supp. 2d at 1309. The homeowner was lawfully armed, was not the target of the search, and believed the officers were intruders. <u>Id.</u> No evidence showed third parties were at risk. <u>Id.</u> Here, by contrast, even if Officer Samples imprudently closed the distance, he was lawfully on the property, during the daylight hours and in his police uniform. Samples Mot. at 7 (citing Samples Dep. at 218–19); Pl. Resp. at 7 (citing Samples Dep. at 218–19). The asserted officer-created danger is not analogous to <u>Swofford</u>, where force followed a distinct constitutional violation. <u>Swofford</u>, 671 F. Supp. 2d at 309. In any event, <u>Swofford</u> cannot clearly establish the

**OPINION – 22**

3:24-cv-00326-CRK-LLL

law after the Supreme Court rejected the "provocation rule" on which it relied.  See Mendez, 581 U.S. at 431.  Accordingly, because Swofford rests on materially different facts and on a rationale the Supreme Court has rejected, it does not clearly establish that Officer Samples's conduct violated the Fourth Amendment.

Plaintiff identifies no controlling precedent, broader principle that applies with obvious clarity, or conduct so egregious that precedent is unnecessary.  See Corbitt, 929 F.3d at 1312; Pelzer, 536 U.S. at 741–45; Powell, 25 F.4th at 920.  Finally, these facts do not present the kind of "obvious clarity" or egregious conduct that renders precedent unnecessary.  Cf. Oliver v. Fiorino, 586 F.3d 898, 906–08 (11th Cir. 2009) (repeatedly tasing a non-threatening individual until he collapsed and died was obviously excessive); Saunders v. Duke, 766 F.3d 1262, 1267–69 (11th Cir. 2014) (slamming a compliant, handcuffed arrestee's head into pavement).  Thus, even if a jury could find that Officer Samples violated Kevin's  Fourth Amendment rights when he exited his vehicle, advanced rapidly toward Kevin who was stationary at the wood line with the hatchet at his side, and created a situation which required deadly force rather than attempting to deescalate, the law was not clearly established such that a reasonable officer would know the creation-of-danger violated the Fourth Amendment.

## II.    City of Jacksonville, Florida Wrongful Death Claim

Plaintiff also asserts Florida wrongful-death claims against the City of Jacksonville, alleging vicarious liability for Officer Samples's excessive, unreasonable use of force and for his negligent acts and omissions.  Pl. Mahan Compl. at 6, 9, April

**OPINION – 23**

3:24-cv-00326-CRK-LLL

1, 2024, ECF No. 1 ("Mahan Compl."). Defendant City of Jacksonville argues that it is entitled to judgment as a matter of law on Plaintiff's claim.[13] Jacksonville Mot. at 10. Because the court grants summary judgment on the federal claim that gives rise to its supplemental jurisdiction, the court declines to exercise jurisdiction over the Florida state law claims. 28 U.S.C. § 1367(c)(3).

A federal court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The court has supplemental jurisdiction "over all claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction under § 1367(a) includes "claims that involve . . . additional parties." 28 U.S.C. § 1367(a).

When exercising supplemental jurisdiction over a state claim, a federal court may decline to exercise that jurisdiction if the court dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In fact, dismissal of supplemental state law claims is "strongly encouraged" where the original federal claims are dismissed before trial. Baggett v. First Nat'l Bank, 117 F.3d 1342, 1353 (11th Cir. 1997) (dismissing state law claims without prejudice because they were "best resolved" by state courts) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Where § 1367(c)(3) applies, courts must consider the "judicial economy,

---

[13] Plaintiff did not bring any federal claims against the City of Jacksonville. See generally, Mahan Compl.; see also Def. Reply to Pl. Resp. in Opp'n to Jacksonville Mot. Summ. J. at 1, June 25, 2025, ECF No. 48 ("Jacksonville Resp.") (noting Plaintiff did not plead a § 1983 claim against Jacksonville). See Monell v. Dept. of Soc. Services of City of New York, 436 U.S. 658, 701 (1978).

**OPINION - 24**

3:24-cv-00326-CRK-LLL

convenience, fairness and comity" of dismissing supplemental state claims.  <u>Palmer</u> <u>v. Hospital Authority of Randolph County</u>, 22 F.3d 1559, 1567 (11th Cir. 1994). Where a federal court need not decide state law, it should avoid doing so "both as a matter of comity and to promote justice between the parties."  <u>Gibbs</u>, 383 U.S. at 726. State courts, not federal courts, are the appropriate final arbiters of state law.  <u>See</u> <u>Baggett</u>, 117 F.3d at 1353.

Here, declining to exercise jurisdiction over the Florida tort law claims aids judicial economy.  <u>See</u> <u>Stalley v. Cumbie</u>, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022). The court has not ruled on the merits of Plaintiff's state claim or issued orders that would be duplicative in a separate state adjudication.  <u>See</u> <u>id</u>.  Further, even though discovery has already been completed, that discovery can be used in an eventual state court case.  <u>See</u> <u>Jacobini v. KPMG LLP</u>, 314 F. Supp. 2d 1172, 1181 (M.D. Fla. 2004).

Second, dismissal does not change the convenience to the parties.  Given that the events giving rise to this litigation occurred in Duval County, Florida, and all parties reside or do business in Duval County, it will remain convenient to the parties to "gather the evidence, parties, attorneys and witnesses for trial" in Duval County state court.  <u>See</u> <u>id</u>.

Third, dismissal will not prejudice either party. Both parties have conducted discovery, and it can proceed in state court without relitigating any issues.  Further, declining to exercise supplemental jurisdiction will not jeopardize the timeliness of Plaintiff's state law claims.  Section 1367(d) "stops the clock" on the limitations period for supplemental claims while the federal action is pending.  <u>See</u> <u>Artis v. District of</u>

**OPINION – 25**

Columbia, 583 U.S. 71, 75–83 (2018); 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").[14]

Finally, comity weighs strongly in favor of dismissing Plaintiff's Florida tort law claims.  See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).  Comity is protected "when issues of state law are resolved by state courts." Id.  Resolution of Plaintiff's state law claims for wrongful death under Fla. Stat. § 768.19 depend on determinations of Florida state law.  See Vaughn v. City Orlando, 2009 WL 3241801 at *8 (M.D. Fla.) (citing Fla. Stat. § 768.19) aff'd per curiam, 413 F. App'x 175 (11th Cir. 2011).  Florida state law permits a wrongful death action by a decedent's representative where the death was caused by negligence or a "wrongful act," which encompasses the use of excessive force by a police officer.  Id.  A negligence claim necessarily requires an analysis under Florida law to inquire into the officer's duty, whether sovereign immunity applies, and state damages calculations.  See, e.g., Bowden v. Henderson, 700 So.2d 714 (analyzing a negligence claim against a Sheriff's office for negligence of a deputy that resulted in death.).  Likewise, battery claims for excessive force under Fla. Stat. § 776.05(1) will turn on a Florida state law

---

[14] The Supreme Court of Florida has held that the Section 1367(d) tolling provision is applicable to all claims brought under supplemental jurisdiction in federal court and "serves to prevent the limitations period from expiring while a plaintiff unsuccessfully pursues state claims in federal court in conjunction with federal claims."  Krause v. Textron Financial Corp., 59 So.3d 1085, 1091 (Fla. 2011) (citing Blinn v. Florida Department of Transportation, 781 So.2d 1103 (Fla. 1st Dist. 2000)).

3:24-cv-00326-CRK-LLL

interpretation of what is "excessive" and "reasonable."  See Gomez v. Lozano, 839 F. Supp.2d 1309, 1323 (S.D. Fla. 2012).  Accordingly, the court exercises its discretion under 28 U.S.C. § 1367(c)(3) and dismisses Plaintiff's state law claims against the City of Jacksonville for decision by the state courts.

**CONCLUSION**

Because Plaintiff has not met her burden of asserting that the constitutional violation of Officer Samples's use of excessive force was "clearly established" at the time of the incident, Officer Samples is granted qualified immunity and is entitled to summary judgment on the 42 U.S.C. § 1983 claim.  The remaining state claim for battery is best litigated in Florida state court, as there is no longer an affiliated federal claim before the court.  Accordingly, the court declines to exercise supplemental jurisdiction over the state law claim and dismisses Plaintiff's Fla. Stat. § 768.19 wrongful death claim against the City of Jacksonville without prejudice.

For the foregoing reasons, Defendant's Motion for Summary Judgment with respect to Plaintiff's 42 U.S.C. § 1983 claim is granted, the Plaintiff's Fla. Stat. § 768.19 claim is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Judgment will enter accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:    October 20, 2025
          New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION – 27**